Orange,
*March*,
1842.

Slack, *qui tam*,
*v.*
Gibbs *et al.*

Silas Slack, *qui tam*, *v.* Stephen Gibbs and Amos Gibbs.

An action to recover the penalty for being a party to a fraudulent convey-
ance cannot be maintained in the courts of this state if the conveyance
was made in another state.

Under the statutes in force previously to the passage of the revised statutes,
if a fraudulent conveyance is made in one county and the party aggriev-
ed and the parties to such conveyance all reside in another county, the
action may be brought in the county where the parties reside, for the
benefit of the plaintiff and the treasurer of that county.

A joint action against the fraudulent grantor and grantee, to recover the
penalty, cannot be maintained, and if both are joined as defendants and
a verdict is obtained against them, judgment will be arrested.

This was a *qui tam* action, brought by the plaintiff to re-
cover of the defendants, as well for himself as for the trea-
surer of the county of Orange, the penalty of the statute
against fraudulent and deceitful conveyances.

The plaintiff, in his declaration, after reciting the seventh
section of the act entitled "an act for the punishment of cer-
tain inferior crimes," passed November 15, 1821, (Comp.
Stat. Slade's Ed. p. 266,) set forth and alleged that the de-
fendant, Amos Gibbs, was indebted to him in the sum of
thirty two dollars, specified ·in the said Amos' promissory
note to the plaintiff, dated March 30, 1840; that the said
Amos was then and there seized and possessed of certain
lands and tenements in Tunbridge, in the county of Orange,
(describing them,) of the value of five hundred dollars; that
the said Amos then owned certain personal estate, (describ-
ing it;) 'that the said Amos, afterwards, to wit, on the first
' day of April, 1840, at Hartford, in Windsor county, to wit,
·' at Tunbridge aforesaid, fraudulently and deceitfully and
' with intent to defraud the plaintiff of his said demand
' against the said Amos and to altogether defeat and avoid
' the same, by his certain deed of warranty, executed in due
' form of law, dated the day and year last aforesaid, for the
' pretended and feigned consideration of eight hundred dol-
' lars, conveyed the said real estate to said Stephen Gibbs,
' and, on the thirty-first day of March, 1840, with like frau-
' dulent intent, sold, conveyed and delivered the personal
' estate above described to the said Stephen. And the plain-
' tiff further says that the said Stephen then and there ac-

'cepted and received said conveyance from the said Amos,
'and was then and there privy to the same and had full no-
'tice of said fraudulent and deceitful intent and purpose of
'the said Amos therein, and that the said Stephen, so being
'privy to said fraudulent and deceitful conveyance of said real
'estate and said goods and chattels above described, and with
'notice of such fraudulent intent of the said Amos, as aforesaid,
'afterwards, to wit, on the day and year last aforesaid, at Tun-
'bridge aforesaid, and at sundry other times thereafter, did
'justify said conveyance to be made, had and executed, *bona*
'*fide,* and upon good consideration.   By means of all which
'the plaintiff hath been greatly aggrieved, hindered and de-
'layed, and wholly defrauded of his said debt against the said
'Amos, to wit, at Tunbridge aforesaid, all which is against the
'form, force and effect of the statute in such case provided.'

The defendants pleaded not guilty and issue was joined to
the country.

On the trial in the county court, the plaintiff introduced
testimony tending to prove that, on the last day of March,
1840, the defendants started from Tunbridge, Vt., where
both plaintiff and defendants resided, for Boston, with seven-
teen horses; that eight of said horses were owned by the
defendant, Amos Gibbs, and the remainder belonged to
Stephen Gibbs, the other defendant; that, immediately pre-
viously to their leaving Tunbridge, most of the property de-
scribed in the plaintiff's declaration, except the horses, was
conveyed by said Amos to said Stephen, and that they went
together, on said last day of March, 1840, to Lebanon, in the
state of New Hampshire, where the said Amos executed a
bill of sale of the horses owned by him to said Stephen, and
that all the property was sold and conveyed by the said
Amos to the said Stephen for the purpose of defrauding the
plaintiff and other creditors of said Amos.

The plaintiff contended, and requested the court to charge
the jury, that, if there was sufficient evidence in every other
particular to entitle the plaintiff to recover the value of
said horses the fact of making the sale of said horses in
New Hampshire would not deprive the plaintiff of his
right to recover for said horses in this action.   But the
court decided otherwise, and, among other things, charged
the jury that the plaintiff was not entitled to recover for the

fraudulent sale of said horses, and that all the testimony, relating to them should be laid out of the case.

The jury returned a verdict for the plaintiff, to recover the value of the property fraudulently sold, excepting the horses, and the plaintiff excepted to the charge of the court.

The defendants then moved in arrest of judgment for the insufficiency of the declaration. The county court overruled the motion and rendered judgment for the plaintiff, and to this decision the defendants excepted.

*Wm. Hebard,* for defendants.

The only question presented by the plaintiff's bill of exceptions, is in relation to the correctness of the charge of the court relative to the horses sold in New Hampshire. And in that was there any error?

I. This question depends mainly upon the construction of the statute, upon which the action is founded.

1. This is a penal statute, and penal statutes, are to be construed strictly, and nothing is to be taken by intendment or inference. *Brooks* v. *Clayes & Morse,* 10 Vt. R. 37. 1 Black. Com. 88, and the notes. *Commonwealth* v. *Barlow,* 4 Mass. R. 439. *Melody* v. *Reab,* 4 Mass. 471.

2. The statute, upon which this action is founded, defines the offence for which this penalty is provided, " *an inferior crime or misdemeanor.*" And *crimes* are *punishable in the county where they are committed.* This same statute, among other things, prohibits *horse racing,* and the vending of *lottery tickets.*

Suppose these defendants had been guilty of a breach of that statute in either of the particulars last named by going into New Hampshire, and there committing the offences named, could they be prosecuted here? That would not be pretended, and still that might as well be done as to recover the penalty in this case for an offence committed in New Hampshire.

3. But it is believed that all doubt or difficulty on this part of the case, will be relieved by a recurrence to the reading of the statute, without resorting to general principles for a test.

By the compiled statute it is enacted that " all the parties to such fraudulent and deceitful conveyance," &c., " shall for-

ORANGE,
March,
1842.

Slack, *qui tam,*
*v*
Gibbs.

feit the value of such houses, lands," &c., " and the value of such goods and chattels," &c., which forfeiture shall be equally divided between the party aggrieved and the *county treasurer,* for the use of *the county.* What county is meant by ' *the county?*' It does not mean *any county.* The article, ' *the,*' restricts it to some particular county. Of course there is but *one county* that is entiled to the penalty. Does it mean *the county* in which the parties to the suit reside? That cannot be the meaning, for they may reside in different counties. Does it mean *the county* in which the party aggrieved resides? That cannot be the meaning, for the aggrieved party may be a partnership, or other company, composed of individuals residing in different counties. *Freeman & Forbes* v. *Davison,* 11 Vt. R. 660. Does it mean *the county* in which the parties to the fraudulent conveyance reside? That will not do, for they, too, may reside in different counties. If the above reasoning is correct, there is but one further alternative, and that is, that *'the county,'* as it is expressed in the statute, means *the county in which the offence is committed.* And that is a conclusion that is altogether inevitable, and fully sustained and corroborated by the reading of the whole section. A further conclusion, then, is the inevitable result of the whole. If the true understanding of the statute is that the penalty is to be divided between the party aggrieved and the county in which the offence is committed, the county of Orange cannot be entitled to the penalty for an offence committed in the state of New Hampshire. And this view of it comports with the reading as it is in the revised statutes, which is as follows; " Which forfeitures shall be equally divided between the party aggrieved and the county in which such offence is committed." The revised statutes do not alter the law on this subject. The alteration in the phraseology is merely an expression of the legislature, in relation to the true meaning of the old statute.

II. A further consideration of this case, arises upon the motion in arrest, on account of the insufficiency of the declaration.

1. The declaration does not contain an allegation that the sale of goods and chattels, was a fraudulent sale. It merely states that the said Amos, " with like fraudulent intent" sold

the personal property. &c. This is not a sufficient allegation of a *fraudulent sale.* The action being to recover a penalty, the allegation of the offence committed should be clear and explicit. *Ellis* v. *Hull,* 2 Aikens, 41.

2. There is no sufficient allegation that Stephen Gibbs ever accepted or received the personal estate and goods and chattels, and without such averment and allegation the declaration is bad. The plaintiff says that the ' said Stephen ' Gibbs, then and there accepted and received *said convey-* ' *ance,* from the said Amos, and was then and there privy to ' the same.'

That allegation clearly must refer to the *conveyance* of the real estate. A deed of land is called a *conveyance* and the plaintiff in his declaration uses the term in the same signification. No other *conveyance,* except the *conveyance* of the real estate, having been before named, the expression here used, '*said conveyance,*' by legal and grammatical intendment, refers to the *conveyance* of the real estate, and being so, the declaration in that respect is insufficient.

3. There is no allegation, in the declaration, that Stephen Gibbs was *privy* to-any fraudulent intent of Amos Gibbs, only what refers to the conveyance of real estate, as before stated ; nor that he ever justified any sale of personal estate to have been made. It it alleged that ' he justified *said conveyance* to be made and executed,' but this, as we have before seen, referred to the conveyance of the real estate, no other conveyance having been *made and executed,* and that conveyance was the deed of warranty.

4. A further reason why judgment should be arrested is that the plaintiff claimed a penalty for the sale of real estate, which was effected in the county of Windsor, which can only be recovered for the benefit of Windsor county, and as the court gave the jury no instruction, in relation to that part of the case, and the jury having returned a general verdict, judgment for that reason must be arrested.

The fact that the defendants did not ask for any instruction to the jury on that point will make no difference. *State* v. *Crandall,* 5 Conn. R.

5. The declaration is bad, being against the buyer and seller of the property, and, for that reason, judgment should be arrested. This is a penal action, for a criminal offence,

and, by the common *law*, all offences are several, and offences by statute are also several unless made otherwise by the particular provisions of the statutes creating the offences. 1 Swift's Dig. 587.

The expression of the statute, in this case, is, ' every of the parties to such fraudulent and deceitful conveyance,' &c. ' shall forfeit.' This expression evidently makes the offence several, as clearly as if the expression had been, each of the parties.

Mr. Swift lays it down that the words, ' every person who does the act,' and ' whoever does the act,' are expressions which designate a several offence. And, in a penal action, all the defendants must be convicted or all acquitted.

Again, the statute says that ' every of the parties to such ' fraudulent and deceitful conveyance, *who being privy* ' *thereto, shall justify the same to be made or executed.*" But a conveyance may be *made* with such intent and the *grantee*, at the time, not be informed of it. In such case he does not incur the penalty. *Forbes & Freeman* v. *Davison,* 11 Vt. R. 660.

As this then is an action for a penalty, created by statute, in which one of the defendants *may be guilty* and the other *innocent*, the declaration, for that reason, is evidently bad, and judgment must be arrested.

There are cases in which an action may be maintained against *one* or the *other*, at the plaintiff's election, but not against both. A sheriff and his deputy cannot be sued *jointly* for a tort committed by the deputy alone. But either one of them may be sued. *Campbell* v. *Phelps*, 1 Pickering's R. 62.

*S. C. Eaton* and *L. B. Vilas*, for plaintiff.

The first question in this case arises on the plaintiff's exceptions in relation to the ruling of the court with regard to the property sold in New Hampshire.

It seems that both the plaintiff and defendants resided in Tunbridge in this county, but that the sale of the horses was made in New Hampshire, and if the decision of the county court is sustained, we believe the statute, on this subject, becomes a mere nullity. All that any person would have to

do, to evade the law, would be to go over the line of the state and defraud his creditors living here with impunity.

The statute says ' that the forfeiture shall be equally divi- ' ded between the party aggrieved and the county treasurer, ' for the use of the courty, to be recovered by an action on ' the case,' &c.   Stat. Slade's ed. p. 266, §7.   And we believe that the court will not give a forced construction to this statute for the purpose of enabling the defendants to avoid the penalty.

But, if it should be contended that this statute should be so construed as to give one half the penalty to the county in which the offence is committed, then we ask what constitutes the offience ?   We say that it is the defrauding the creditor of his debt, and where was that done?   Most certainly where the party lived to whom the debt was owing.   What evil did the legislature intend to remedy ?   Very clearly, the defrauding of creditors.   Therefore we believe it the duty of the court so to construe the law as to carry into effect the design and object of the legislature.   Can it be maintained that a fraudulent conveyance is not void by our law, as to creditors here, if made in another state, when made for the very purpose of avoiding debts here ?

Suppose that Amos Gibbs had owned property in three counties in the state, and had, in these several counties, conveyed his property to Stephen Gibbs for the purpose of defrauding the plaintiff alone, who resides in this county, would it have been necessary to commence three suits in order to recover the penalty for a fraudulent conveyance ?   We believe not. The policy of the law is to prevent a multiplicity of suits.

2. The motion in arrest probably presents a new question, so far as it relates to the practice under this statute.   Generally, suits have been instituted in such cases against the parties severally.   But we believe a fair construction of the statute will allow of either course.   It is certain that joining both parties in the same action operates for the benefit of the defendants, as, by suing them jointly, but one penalty can be recovered of both.   How, then, can the defendants complain ?

The statute would seem to bear that construction.   It says ' every of the parties,' &c., and, in order to incur the penalty, it is necessary that the fraudulent intent should exist

in the minds of both the grantor and grantee. *Brooks v. Clayes & Morse*, 10 Vt. R. 37. A *qui tam* action is a civil suit. *Waters, qui tam* v. *Day,* 10 Vt. R. 487.

3. It is not necessary to aver a delivery of the property fraudulently sold; the sale alone constitutes the offence, under the statute. *Fuller* v. *Fuller*, 4 Vt. R. 123.

The opinion of the court was delivered by

WILLIAMS, Ch. J.—In this case we are to determine both the sufficiency of the declaration of the plaintiff, and the correctness of the ruling of the county court on the trial. On the latter, it is only to be said that the proceedings of the county court were unquestionably right. A conveyance of property, however fraudulently intended or conceived, made in another state, cannot be a breach of our penal laws, or subject the party to a penalty therefor. Our laws are of no efficacy out of the territorial limits of the state, and however immoral a transaction may be, committed in another jurisdiction, it cannot be punished here, as a violation of the laws of this state. The sale of the horses in New Hampshire was properly excluded from the consideration of the jury. More important questions arise on the motion in arrest. Those which relate to the form of the declaration may be passed over with this remark, that it appears to have been accurately drawn, and is not liable to any of the technical objections which are raised against it.

That the conveyance was made in the county of Windsor, presents no obstacle against a recovery by this plaintiff, and by a suit brought in this county. The penalty given to the party aggrieved, by the statute in force when this suit was brought, was to be equally divided between him and the county treasurer, without designating what treasurer, and, so far as it was intended as a punishment, it is wholly immaterial into what treasury that part of the sum forfeited shall be paid, and it may as well be paid to the treasurer of the county where the suit is brought as to any other. The party aggrieved, who alone can institute the action, may commence it, either in the county where he resides, or where the defendants reside, and when a recovery is had and satisfaction obtained, he must pay that part which belongs to the public to the treasurer entitled to receive it. This was once decided

in the case of *Chipman, qui tam* v. *Eaton.* The revised statutes have *now* pointed out to what county treasurer the half of the penalty is now to be paid.

A more formidable objection, however, is presented in the joinder of the grantor and grantee as defendants in one suit. It is well settled that when several are sued jointly for an offence, which is in its nature several, and when each separately are liable to the penalty sued for, there can be no recovery and judgment will be arrested if there is a verdict against them. Whether the penalty incurred is a single penalty, or whether each of the parties to a fraudulent deed may be separately guilty, and each liable to a forfeiture, is the question now to be determined. The words of the statute are that ' *every of the parties,*' &c. These are the appropriate words to designate a several offence and a several penalty. There are two parties to a deed or conveyance ; the grantor or grantors and the grantee or grantees, and although, with respect to the grantors, they may be joint or several, whether there is one or more who make the conveyance, and so with respect to the grantees ; yet, we apprehend that the grantor and grantee are several and separate parties to the deed or conveyance, and when every of the parties are declared to be guilty of an offence, and to incur a forfeiture, the natural conclusion would be that *each* was liable, i. e. the grantor and the grantee.

If only one penalty is incurred by a fraudulent conveyance, by the grantor and grantee jointly, neither party could be a witness in a suit brought against the other to recover the penalty, as he would be directly interested to fasten a recovery on the other party, which, if satisfied, would exonerate him from any further liability. This court have decided that, in such an action, the fraudulent grantor may be a witness, and this could only be on the ground that the forfeitures were separate and independent.

Again, the public interest and the interest of creditors require that the whole of the penalties should be inflicted for the suppression of fraud. It should not be permitted to one creditor to recover the whole penalty, in a joint action against the two, if each are equally guilty, and each liable to a penalty.

If we are permitted to reason *ab inconvenienti,* it is apparent that it would be hazardous to two parties to be thus

joined.   The admissions of either would be legitimate and legal evidence, and if the declarations of one strongly implicated the other, it would be very difficult to prevent their having an effect on a jury, unfavorable to the one implicated as well as to the one who made them, notwithstanding the jury should be instructed that the confession of one should not affect the other.   The two last reasons, however, are of no importance if the true construction of the statute is that the offence is joint and only one penalty incurred.   The statute of 27 Eliz. chapter 4 enacts ' that every of the parties ' to a fraudvlent conveyance, or being privy thereto, shall ' justify, &c., shall forfeit one years value of the lands,' &c. This statute, it is to be noticed, is in the words of ours. Under this statute it was held that every defendant found guilty should pay a years value of the land *every one by himself* and not jointly among them all.   13 Viner, 534.

It is true that the statute gives the penalty to the party aggrieved, and, according to the case of *Patridg* v. *Naylor*, Cro. Eliz. 480, it would seem that where a penalty is given to the party aggrived, in the nature of a satisfaction, but one penalty is incurred.   In that case the whole penalty was given to the party aggrieved for impounding a distress in a wrong place.   There was but one act of impounding though several were concerned in it, and as it was but one offence, and given to the party, alone, in the nature of a satisfaction for the damages he sustained, it was adjudged it should be satisfied by one forfeiture.   The penalty under the statute against fraudulent conveyances is not given to the party aggrieved in the nature of a satisfaction for his debt; it is not given to him alone, but, in part, to the county treasurer, and is designed as a punishment of the offender.   The party aggrieved is required to prosecute, as being the one having the strongest motives and the most likely to be induced to bring the offender to justice and to inflict the penalty provided by law.   In any view we can take of this subject, we think the penalties are separate, several, and to be visited on each of the fraudulent parties to the conveyance, and although to inflict the penalty on the grantee, it may be necessary to show that the conveyance was fraudulent as to both, yet, it is very apparent it may be incurred at different times, and a party may make a conveyance with an intent to de-

fraud his creditors, and thus be liable to the penalty, when the person to whom it was made would not be liable, unless he, with like fraudulent intent, accepted or justified the conveyance. Both of the parties cannot be sued jointly, and for that reason the judgment of the county court must be reversed and the judgment arrested.