## DANIEL & STRAUSS v. VACCARO.

1. FRAUD: *Action for under section 1378 Gantt's Digest.*
   In order for the injured or defrauded party to maintain an action for
   damages under section 1378 Gantt's Digest against a party to a fraud-
   ulent conveyance, it is not necessary that the party be first con-
   victed of the misdemeanor as provided in section 1376, (Eakin,.
   Justice, dissenting).

Daniel & Strauss v. Vaccaro.

2. FRAUD: *Action for damages under section 1378 Gantt's Digest: Proof to be made.*

To maintain an action under section 1378 against a grantee in a fraudulent conveyance the plaintiff creditor must prove: 1st, that he has a just debt; 2nd, that his creditor has fraudulently transferred his property to the defendant; 3rd, that the property was liable to execution or attachment; 4th, that the defendant has knowingly aided the debtor to defeat the right of his creditors, and, 5th, the amount of the plaintiff's damages.

3. FRAUDULENT CONVEYANCE: *Intention of parties.*

A conveyance is not necessarily fraudulent because its effect is to hinder and delay creditors, unless it was a contrivance for that purpose and the grantee participated in the design.

APPEAL from *Lonoke* Circuit Court.

Hon. J. W. MARTIN, Circuit Judge.

*John C. England* for appellants.

Fraud is a crime and easily charged, but where an answer denies all allegations of a fraud, it is conclusive unless overcome by testimony. *Bump on Fraud, Conv. 558–9, 3rd Ed.*

In order to sustain the findings and judgment of the court below, the proof must clearly show,

1st. That the conveyances were made to hinder, delay and defraud creditors.

2nd. That the appellants participated in this in accepting the conveyances.

3rd. That appellees were hindered, etc., in the collection of their debt, and that by reason thereof they were damaged.

4th. The amount of damage.

*None* of these points were established.

Every transfer has a tendancy *pro tanto* to hinder and delay creditors, by diminishing the fund out of which payment may be enforced, but if made in good faith will be sustained even if it includes all the debtor's property. *Bump Fr. Conv., p. 34–5; 9 Ark., 482.* It must be made *with the intent* to hinder, &c.

A defeasance or right to repurchase within a given time does not constitute fraud. *4 Mason, 321; Bump Fr. Con. 42, 39.* Nor does the retention of the possession by the grantors. *Bump Fr. Con. 63–4 : 4 Mason, 321; 33 Ark., 337.*

As to the inadequacy of the price, see *Bump Fr. Conv. 45–6 ; 22 Ill., 663; 7 Md., 537; 53 Id., 359.*

Appellees had no liens on the property, and hence no right superior to any other creditor. *Bump Fr. Conv., 528.*

The statute is criminal and highly penal and should be strictly construed. The right to recover double damages is *in addition* to the fine and is therefore cumulative punishment, and the same degree of proof should be required as in criminal prosecutions. The action should follow, not precede the criminal prosecution.

*Clark & Williams* also for appellants.

This action is based upon *sec. 1378, Gantt's Dig.* It is *quasi* criminal, and is digested with and dependant upon criminal laws. *Sec's 1376–7.* No action can be brought until defendant has been tried and convicted of the crime. The damages are given *"in addition" to the fine to be assessed in the criminal prosecution.* Being criminal and highly penal the statute must be strictly construed. *9 Bacon Ab. "Statute," p. 252; Bouviers Ed. 1854; U. S. v. Wilson, Baldwin 78; U. S. v. Twenty Coils, etc., 1 Baldwin, 505–8; 2 Inst., 468; 1 Caines Rep., 37; 4 Conn., 421 ; Crafts v. Plumb, 11 Wendell.* See also decisions upon the Vermont statute. *14 Vt., 347 ; 20 Id., 56 ; 22 Id., 255,* and *4 Denis, ( N. Y.), 374, etc.*

The proof must be positive in *quasi* criminal cases. *1 Greenl. Ev., 277; Ib., secs. 34–5; 3 Ib., sec. 29; 19 Ark., 176.*

The sale with the defeasance or right of redemption

has some of the ear-marks of a mortgage. If it was a security for a debt it was a mortgage. *1 Hilliard on. Mort.*, *p. 73–4, Ch. 4, sec. 5–6–7; 3 Ark.,364.* If a mortgage, where is the fraud?

Fraud was charged in the bill and specifically denied in the answer, and the burden of proof was upon the plaintiffs and they have failed to sustain it. Fraud is never presumed. *4 Ark., 302; 6 Id., 309; 9 Id., 482; 17 Id.,. 151.* Even strong grounds of suspicion are not sufficient. *11 Ark., 378; 18 Id., 124; 20 Id., 217.*

The retention of the property does not constitute fraud. *7 Ark., 269; 8 Id., 204.* The *intent to defraud* must exist in the minds of both parties, and that must be proved as a fact. *17 Ark., 146; 8 Id., 266; 18 Id., 124; 23 Id., 258; 20 Id., 325–332.* A performance of creditors is not fraudulent. *22 Ark., 185.*

The evidence of intent to defraud was much stronger in *Erb v. Cole & Dow, 31 Ark., 554,* than in this; yet. Erb's title was upheld.

Argue upon the evidence and contend that the court erred in its finding of facts and declarations of law.

The price paid was not inadequate.

*John Hallum* for appellees.

A sale of goods in *good faith* to pay a debt and without intent to delay other creditors is valid, but if an interest is reserved by the debtor it is fraudulent as to creditors. *31 Ark., 666.* A creditor may purchase from a failing debtor and will not be affected by fraudulent intent unless he participates in the fraud, etc. But he must allow a fair price and not buy more than is necessary for his protec-tection. *Ibid.* Fraud may be shown against any deed. *26 Ark., 41.* No offer to place the party *in statu quo* is necessary when a deed is obtained by fraud. *26 Ark.,. 373.*

Knowledge of fraudulent intent by the purchaser, or of circumstances sufficient to put him upon enquiry, will defeat the title. *32 Ark.*, *251*.

Non-delivery of goods sold is fraudulent as to creditors. *20 Am. Dec.*, *189–637*. The grantor's possession either of personalty or realty, presumed fraudulent as to creditors. *17 Am. Dec.*, *744*. Direct proof of fraud is not expected. *2 Am. Dec.*, *703*.

A purchaser for an *antecedent debt* is not a *bona fide* purchaser, but a mere *volunteer*, as against creditors. *2 Kent Com.*, *542 and note*; *6 John Chy.*, *437*; *4 Wheat*, *500*.

See also *20 John*, *637*; *1 Humph.*, (*Tenn.*), *468*; *3 Ib.*, *51*; *1 Dev, Eq.*, *103*.

The statute is remedial in its nature, designed to correct an evil and give a remedy to those who suffer by fraud, etc., and ought to be liberally construed.

### STATEMENT.

SMITH, J. John Emerick & Son were in the year 1880, saloon keepers in the town of Lonoke. Fred. Emerick, the son, was the owner of a block of ground, upon which stood the family residence, occupied by both partners, and was also the owner of the saloon property, building and fixtures. These two parcels of property were worth about $2,500. But there were several incumbrances, Daniel & Strauss held debts against them to the amount of $1,130.31, as evidenced by three several promissory notes, and secured by three separate recorded deeds of trust upon the property. A balance of purchase money on the residence was also due, which, together with taxes and mechanics' liens, aggregated $491.89.

Being hard pressed by Daniel & Strauss, whose debts were all due and who had it in their power to foreclose their deeds of trust by advertisement and sale, Fred. Emer-

Daniel & Strauss v. Vaccaro.

ick, after some preliminary negotiations, on the twenty-fifth of May, 1880, sold and conveyed the property above described to them, the consideration being the cancellation of the debts held by them and the assumption of the other privileged debts, the whole amounting to $1,622,20,  Afterwards another claim of $115.55 against the property was presented and paid off by Daniel & Strauss,  making the total cost of the property to them $1,737.75.

On the same day that Daniel & Strauss received the conveyance, they executed a defeasance, to the effect that if Fred. Emerick should, on or before the thirty-first of December, 1880, repay to them the $1,622.20, together with such sums of money as they might expend in the way of taxes, insurance and repairs, and interest at the rate of ten per cent. per annum, then they would reconvey the property to him, and that in the meantime he might keep possession ; he having a retail liquor license which would not expire until the end of the year, and desiring to continue his business until that time.   The conveyances to Daniel & Strauss were immediately filed for record ; but the separate defeasance was deposited for safe-keeping with a mutual friend, one Webster, who was a clerk in the store of Daniel & Strauss.   However, no effort was made to keep the transaction a secret.   At the end of the time stipulated for, Emerick not having offered to redeem or repurchase, Webster delivered this agreement to Daniel & Strauss, who took possession of the property and thereafter considered themselves absolute owners of it.

At the time that Fred. Emerick transferred his property to Daniel & Strauss, there was an action pending by Vaccaro & Co. against John Emerick & Son, upon which judgment was rendered in September, 1880, in favor of the plaintiffs for $385.85 and costs.   And Vaccaro & Co. have now brought this action at law against Daniel & Strauss, alleging that they have knowingly accepted false and fraud-

Daniel & Strauss v. Vaccaro.

ulent conveyances, that the plaintiffs have thereby lost their debt, and that by force of the statute in such cases made and provided, the defendants are liable to them in double damages.

After a demurrer to the complaint had been overruled, the defendants answered, denying that there was any fraud in the transaction, or, if there was, that they were privy to the intent of Emerick and alleging that their sole motive was the collection of their own just demands.

A jury was waived and the trial proceeded before the court, which found that the Emericks were insolvent ; that the deeds were made to hinder, delay and defraud creditors ; that the defendants participated in this fraudulent intent ; and that the plaintiffs thereby lost the whole of their debt. Judgment was accordingly rendered against Daniel & Strauss for $801.50. The motion for a new trial set up that the findings of facts and the declarations of law were alike erroneous and that the findings and judgment were for the plaintiffs, whereas the same should have been in favor of the defendants. But the motion was denied.

## OPINION.

At common law no creditor, who had not acquired a lien, could maintain an action against one who had combined and colluded with his debtor. Assumpsit would not lie, for there is neither an express pomise to pay the creditor's debt, nor any privity from which the law will imply such a promise. Case could not be supported, because the creditor having no special title in or to his debtor's property, the damages are too contingent and remote.

This action then must be bottomed on the following provisions of *Gantt's Digest:*

"*Sec. 1376.* Every person who shall be a party to any conveyance or assignment of any real estate, or interest,

1. FRAUDULENT CONVEYANCE: Action for, under sec. 1376 Gantt's Digest.

Daniel & Strauss v. Vaccaro.

in any real estate, goods or choses in action, or any rents or profits issuing therefrom, or to any charge upon such estate, with intent to defraud any prior or subsequent purchaser, or to hinder, delay or defraud creditors or other persons, shall be deemed guilty of a misdemeanor, and on conviction, shall be fined in any sum not less than five hundred dollars.

"*Sec. 1378.* Any person who shall violate any of the provisions of the two last preceding sections shall, in addition to the fine to be assessed in the criminal prosecution,. pay to every person so by him injured or defrauded, by any of the means therein mentioned, double the damages sustained by him, to be recovered by proper action."

It is argued that no action lies on this statute before conviction. But the statute does not make the right of action dependant on the previous conviction of the grantee in a fraudulent conveyance. And the legal analogies are all against this proposition. At common law, a party could not sue for damages arising out of a felony, until after a trial upon a criminal prosecution; "the excellent policy of. that law preventing the person injured by the trespass from. seeking his own redress, until it should be first ascertained, and determined by the proper tribunal what the justice of the state requires of the accused for the deed. Otherwise it was supposed that persons injured would often obtain. compensation for such trespasses, upon an agreement not. to complain of the public wrong; and reparation would be made for the civil injury to escape the justice of the country." But the rule never extended to misdemeanors; and. even in regard to felonies our legislature has changed it. The civil injury is no longer merged in the felony. *Sec.. 4765 of Gantt's Digest*; *Brunson v. Martin, 17 Ark.,. 270.*

Wherever a statute gives a right, the party by consequence shall have his action to enforce it. So that the

*Conviction of the misdemeanor not necessary.*

novelty of the particular complaint is no objection, provided an injury cognizable by law be shown to have been inflicted on the plaintiffs. They had no control over the criminal prosecution and are not responsible for its non-institution or its miscarriage.

We do not regard the statute which gives the right of action as penal in its character, but as remedial. The action provided for is not a *qui tam* action to recover a penalty for being a party to a fraudulent conveyance, like the Vermont statute which is construed in *Slack v. Gibbs, 14 Vt., 357*; *Colgate v. Hill, 20 Id., 56,* and *Aiken v. Peck, 22 Id.,* *255.* But it more resembles the English statute giving double damages to a landlord against a stranger for assisting a tenant to carry off and conceal his goods, whereby the plaintiff was prevented from distraining for his rent; or the Maine statute which declares that any person who assists a debtor to defraud his creditor by making a fraudulent concealment or transfer of his property shall be answerable under a special action on the case, to any creditor, in double the amount so fraudulently concealed or transferred. The two statutes last mentioned have been decided to be purely remedial. *Stanton v. Wharton, 9 Price. 301*; *Quinby v. Carter, 20 Me., 218*; *Philbrook v. Handley, 57 Id., 53; Thacher v. Jones, 31 Id., 528*; *Frahock v. Patten, 38 Id., 103.*

*Reed v. Northfield, 13 Pick. 94,* was an action against a town for an injury to the plaintiff, caused by a defect in a highway, under a statute giving double damages. SHAW, C. J., in delivering the opinion of the court, said: "The action is purely remedial and has none of the characteristics of a penal prosecution. All damages for neglect or breach of duty operate to a certain extent as punishment, but the distinction is, that a penal action is prosecuted for the purpose of punishment, and to deter others from offending in like manner. Here the plaintiff sets out the liability of the

town to repair, and an injury to himself from a failure to perform that duty. The law gives him enhanced damages ; but they are recoverable to his own use, and in form and substance the suit calls for indemnity." See also *Suffolk Bank v. Worcester Bank, 5 Pick. 106.*

The next point is : What proof must the creditor make to entitle him to recover in an action brought upon this statute? It devolves upon him to show : 1, that he has a just debt ; 2, that his debtor has fraudulently transferred his property to the defendant ; 3, that that property was liable to be taken on execution or attachment ; 4, that the defendant has knowingly aided the debtor to defeat the right of his creditors ; and 5, the amount of the plaintiff's damages. *Quinby v. Carter, supra.*

Upon the first proposition the present case presents no difficulty ; but upon the remainder the evidence is wholly insufficient. Granting that the Emericks are now insolvent and that the plaintiffs are unable to collect their debt, there is no proof of fraud in the concoction of the transfer and none of any circumstances from which fraud might be inferred. A conveyance is not necessarily fraudulent because its effect is to hinder and delay creditors, unless it was a contrivance for that purpose and the grantee participated in the design. And the difficulty in demonstrating the intention from the overt acts and conduct of the parties furnishes no reason for courts to assume that a transaction is infected with fraud from vague suspicions of its nature and character, unassisted and uncrontrolled by any certain or fixed rules. *Hempstead v. Johnson, 18 Ark., 123, Bump on Fraud. Con., 605.*

The fact that the price paid approximated the value of property is a potent argument of the good faith of the parties. Here was no gross inadequacy of consideration, imparting to the sale a dubious aspect. Daniel & Strauss did not buy it for a song, but paid probably as much as if it

·had been sold under the hammer by virtue of their deeds of ·trust. They are not proved to have any knowledge of the ·plaintiff's claim or of any other debt due by the Emerichs, nor to have had or exercised any undue influence over them. And they had the right to make the best bargain they could .for themselves, without considering what effect it might have on others. The Emerichs probably assented to the arrangement because it was the best they could make. They ·were at the mercy of Daniel & Strauss.

It is unnecessary to determine whether the transaction ·was a conditional sale or a mortgage. We incline to the opinion that it was the former, and in giving Emerich a limited time within which to repurchase, time was made of the essence of the contract, But whether it was the one or ·the other, the circumstance that the Emerichs were allowed to retain possession for the rest of the year, does not constitute fraud, if the transaction was in other respects unobjectionable. The instruments of transfer· were placed of record. *Feild v. Simco, 7 Ark., 269*; *Stone v. Waggoner, 8 Id., 204.*

But we will not pursue the subject. This is a case of novel impression in this State. It occurs to us that in actions ·based on this statute, great embarrassment will be felt both by courts and juries in arriving at the extent of the injury and *quantum* of damages. For, suppose it to be proved that the debtor has conveyed away his property, without receiving any equivalent for it, with intent to evade the payment of his debts, and that the creditor has no other means of obtaining payment; what is the measure of damages? Not the whole amount of his debt, for that might exceed the value of the property conveyed; nor yet the value of the property, for to that he has no better claim than other creditors. The only loss which could be shown would be that he has been deprived of a chance or possibility ·of being paid out of that property. The loss would not even

Daniel & Strauss v. Vaccaro.

be so great as this, for in many cases he might still reach the property in the hands of a fraudulent holder. The value of such a chance is not readily to be estimated by any data or table that we are acquainted with. *Bump on Fraud, Conv., 528.*

Reversed and remanded for a new trial.

### SEPARATE OPINION BY

EAKIN, J.  I concur in reversing the judgment below, not only because I think no fraud nor estimable damage has been clearly shown; but also, because I doubt whether a civil action for double damages can be sustained under the statute before conviction; and further because I think that even after a criminal conviction, no damage could ever be assessed in cases where the plaintiff had no lien upon the property fraudulently conveyed, nor specific interest in it.

Amongst the criminal provisions of the original revised statutes of the State, it was made a high misdemeanor "to be a party" to any conveyance of property to hinder, delay or defraud creditors, punishable "on conviction" by a fine of not less than $500.

By a following section it was also made a misdemeanor to make sales on real estate a second time.   This was punishable "on conviction" by a fine of not less than twice the value of the land.   Then follows this:   "Any person who shall *violate* any of the provisions of the two last preceding sections, shall *in addition to the fine to be assessed in the criminal prosecution* pay to every person so by him injured, or defrauded, by any of the means herein mentioned, double the damages sustained by him, to be recovered by action on the case.   *Rev. Stat. Ch. 44, Div. 4, Art. 11.*

So the act has stood for more than forty years, and this, so far as I am advised, is the first civil action ever brought under it.   Practically the act has lain dead.

I think it obvious from the *class* of laws in which these

sections are grouped, being wholly of a criminal character ;: from the nature of the declarations which expressly forbid nothing, but simply affix punishments to particular acts,. which is the characteristic of criminal legislation ; and espe-- cially from the phraseology of the last section, which speaks of the *violation*, and the *criminal* prosecution, that the legislature never intended to give a separate and distinct. civil action, independently of a criminal conviction. If the- fines can only be inflicted *on conviction*, by what logic can we suppose that the matter *in addition to* the fines was. intended to be without any conviction?

Besides, the two preceding sections are simply criminal,. making and defining the punishments of misdemeanors.. How can it be known without conviction of the culprit, that. they have been violated at all? Sometimes aggravated: punishments are prescribed for a second offence. They can never be imposed however by any, the strongest out-- side proof, that a similar offence has been committed by the same person, before the one in question. There .must. have been conviction. There is but one proof of the viola-- tion of the criminal law, which can be recognized in a civil action, and that is conviction. Sometimes indeed civil' actions are given upon a state of facts which would also- support an indictment, but the language of the statute here in question does not seem apt to convey that impression.. The civil action is made to depend on the *violation of the* *criminal law*, and is expressly in addition to, and not inde- pendent of the punishment.

The probable intention of the legislature was to send the injured party to a jury in a civil action, after the liability became fixed, to ascertain the *amount* of damages. These would not be involved in the issues in the criminal case. Nothing but the *value of the land* would come within any of the criminal issues.

Besides, the statute, if it intended to give an independent.

civil action, could have no application to a case like this,. where the plaintiff shows no lien, nor specific interest in the goods fraudulently conveyed. At common law he was not considered to have sustained *any* damage. The statute attempts no new rule for defining damage. Twice nought is no more than nought, and that is nothing.

"Double the damages sustained by him" means double the amount which the law, as applicable to the circumstances, would consider he had sustained. The rule for estimating that had been already fixed by law.

Neither by common law, nor by statute of Elizabeth against fraudulent conveyances, would an action at law lie on behalf of a mere creditor, having no title to, or specific interest in the debtor's property, by lien or otherwise, to recover damages against a fraudulent grantee of the debtor,. resulting from the consequent inability of the creditor to collect his debt. Such damages were too remote, and depended on too many contingencies for legal recognition. So held in *Smith v. Blake, 1 Day, (Con.),* in which Gould, counsel for defendant, remarked that, during the two hundred and fifty years in which the statute of Elizabeth had been in force in England, there "never was an action of this kind brought into Westminister Hall." See also *Moody v. Burton, 27 Maine, 427,* in which Mr. Justice Shepley very forcibly presents the conclusion that a chance of one creditor amongst others to make his debt depends on too many contingences to be the subject of damages. "There would be no data, tables, or other means afforded by which such a chance could be estimated. The loss or injury would be too remote for legal estimation." A few cases which seem to hold differently are distinguished by features of existing liens, or vested rights in the property itself.

In accord with this is *Lamb v. Stone, 11 Pickering,. 526,* which was an action at law by a creditor against one

who had taken a fraudulent conveyance from the debtor. That was an action of new impression in Massachusetts, and then without precedent. But upon principle, conceding the legal *tort* in defendant, it was held to belong to a class of cases in which, from the nature of things, the damages are so remote, contingent or indefinite as to form no ground of action. The court said the plaintiff could not have the aid of the court to speculate on the defendant's fraud, and that the action, if sustained, would become a precedent which would produce, in practice, great inconvenience, and oftentimes do manifest injustice." The case is very full and suggestive, in many respects, of the true solution of the difficulties presented by the case now in judgment.

That the books are not more full of such authorities, has doubtless resulted from the almost universal recognition by the bar of the principle which would make such suits use-less.

I apprehend grave consequences from holding, that with-out the safeguards thrown around indictments, or the responsibilities attending criminal prosecutions, or the strictness of proof therein required; a creditor disappointed in the collection of a debt, may harrass one who has dealt with his debtor, and not only recover damages unknown to the common law, but double the amount which any jury might guess he had sustained. For, after all, damages must be more or less matters of conjecture in each particu-lar case. Because my debtor has fraudulently conveyed property, upon which I might have levied after judgment, *non constat* that I am hurt. For he might have sold it hon-estly and squandered the money, or I might still reach it by attachment, or have my remedy in chancery. I think the old and well recognized civil methods of dealing with fraudulent conveyances adequate to substantial justice, and that the construction now put upon the statute may lead to injustice and oppression, as it almost surely will to much

litigation. Creditors, in the race of diligence, are not at all times considerate, and a law like this may be much abused *in terrorem*, against well meaning people who, without intentional fraud may have dealt with failing men. I doubt much whether the legislature intended it; and doubting, must give the law more lenient construction. It has all the features of a high penal statute. The universal rule of construction applicable to such, in the civil, Cannon and common law countries and tribunals is, "*In poenalibus causis benignius interpretandum est.*" *Liebers Hermeneutics*, (*by Hammond*), *note "1," p. 293.*

I think the action was misconceived, and therefore concur in the judgment of the court.